## THE RITA.

(District Court, S. D. New York. June 27, 1898.)

SALVAGE—DELAWARE BREAKWATER—EXTREME PERIL—SHORT SERVICE.

The R., having drifted within 50 or 100 yards of Delaware breakwater in a northeast storm, and being in extreme peril in case of any increase in the storm, was rescued by the tug P. in a few hours' service. One-eighth of the values saved was awarded, being $3,466.

This was a libel in rem by William J. Minford and another against the bark Rita, her cargo and freight, to recover compensation for salvage services.

Peter S. Carter, for libelants.

Cowen, Wing, Putnam & Burlingham, for claimant.

BROWN, District Judge. The salvage compensation claimed in the above libel is for services rendered to the bark Rita by the steam-tug Protector in the forenoon of April 28, 1898, in coming to the relief of the Rita not far from the East Lighthouse at the Delaware breakwater during a severe storm, and towing her inside the breakwater. The towage service was altogether from one to two hours, from 9:30 to 11:30 a. m., although the tug lay by the Rita during the afternoon until about 6 p. m. A severe northeasterly gale had been raging for about two days previous. The tug Protector bound north with a tow had put in to the Delaware breakwater two days before. The Rita had come to anchor about a half mile outside of the breakwater, and up to midnight, preceding the salvage service, she had drifted to within about 50 or 100 yards of the breakwater, having lost most of her anchors. She had set signals of distress and was in a perilous position. Had she continued to drift and reached the breakwater wall before the storm subsided, there is no doubt that both ship and cargo would have been a total loss and that more or less of the crew must have lost their lives. In her behalf it is strenuously claimed that she was not drifting after midnight preceding the salvage service, and that her starboard anchor, the force of the storm having somewhat abated, was sufficient to hold her. The libelants have given some testimony to the effect that she was still drifting in the flood tide at the time when the Protector went to her relief at 9:30 a. m. The wind was then hauling to the northward and by the next morning it was northwest. This favored the Rita, and if not drifting when the Protector reached her, she would doubtless have escaped running upon the breakwater without help.

As respects the very important but controverted question whether the Rita was drifting when the Protector reached her, I am inclined to give superior credit to the testimony of the Rita's master and officers. Their opportunities for observing and knowing the exact truth were far superior to those of the libelants' witnesses, most of whom were not in a position to judge upon this point with accuracy. Had the Rita moreover been observed by the Protector to be drifting towards the shore from about 5 o'clock in the morning, when she first became visible to the Protector, it is not probable that the Pro-

tector would have delayed making earlier and more persistent endeavors to reach her. It is said that the Protector waited until the sea somewhat abated; and this partial subsidence of the storm makes more probable the truth of the testimony of the officers of the Rita, that she was not then drifting.

The situation of the Rita was nevertheless one of extreme peril, in case the violence of the storm should be renewed; and the help rendered to her was most timely and efficacious. She was rescued without loss.

The value of the Protector was $20,000. She was insured for only about $12,000. The value of the Rita, with stores and freight, was about $5,000; and her cargo of sugar was valued at $22,727, all of which must have been a total loss had she drifted upon the breakwater. In rendering the salvage service the Protector sustained no loss; but she was exposed to some sea perils. Taking all the circumstances into account, I think an allowance of one-eighth of the values saved will be an appropriate, liberal and just compensation, and in consonance with the principles on which salvage awards should be based, as expressed by Mr. Justice Bradley in the passage so often quoted from the case of The Suliote, 5 Fed. 102. Of the award, one-third should go to the master and crew and the residue to the owners. One hundred dollars should be first paid to the master from the one-third, and the rest divided among the master and crew in proportion to their wages.

Decree accordingly with costs.